# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

HERBERT CARTER, IV,  )
 )
    Movant,  )
 )
v.  )    CV416-029
 )    CR413-112
UNITED STATES OF AMERICA,  )
 )
    Respondent.  )

## **REPORT AND RECOMMENDATION**

Movant Herbert Carter, proceeding *pro se*, moves under 28 U.S.C. § 2255 to vacate his 2014 conviction for possession of a firearm by a felon. Docs. 39, 43 & 44; [1] *see* docs. 3 (indictment), 32 (change of plea), 37 (plea agreement), 38 (judgment for 120 months' imprisonment). He alleges that prosecutorial misconduct invalidates his plea and sentence. Doc. 44.

## I. BACKGROUND

Though he contends otherwise, the record shows that Carter was provided with quite a bit of information prior to his conviction.. For

---

[1] The Court is citing to the criminal docket in CR413-112 unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

example, his plea agreement explained that a guilty plea would subject him to a maximum of 10 years' imprisonment on Count Five (possession of a firearm as a felon). Doc. 37 at 8. It also explained that the probation office would "consider *all* of defendant's conduct related to the offense to which he is pleading, which may include conduct related to Counts of the Indictment which were or are to be dismissed or for which [he] was acquitted, as well as the defendant's criminal history, and that these facts will be considered by the Court in determining [his] sentence." *Id.* Finally, by signing the agreement Carter affirmed that his attorney had been forthright, competent, and fully communicated the rights he was giving away by pleading guilty. *Id.*

There is more. During the change-of-plea hearing, the Court asked him several important questions, which Carter testified under oath that he understood. *See* doc. 46 (Rule 11 Change of Plea Hearing Transcript) at 4 (affirming he understood the Court's admonition that "if you ever seek to undo or set aside what occurs here 11 today you're going to be confronted by the answers you give me, so make sure you understand the words and the questions."). He testified, among other things, that he understood that by pleading guilty he gave up his right

2

to a trial and various civil rights. *Id.* at 8-10, 18. He swore that he appreciated "the difference between a plea of guilty and a plea of not guilty," and understood that if he pled guilty he would "forever lose [his] right to complain on appeal about any action of the government, any government agent, the prosecutor, the magistrate judge, [his] lawyer, this Court, or anyone else as far as any complaint that [he] might have about anything that [he] say[s] . . . they did or failed to do in [his] case." *Id.* at 9-10. He affirmed that by pleading guilty, he admitted "that [he] did what the government accuse[d] [him] of doing pursuant to [his] plea agreement." *Id.* at 10.

Carter also testified that his attorney had met with him three or four times and had explained the charges of the indictment, any possible defenses, and the sentencing guideline information to him. *Id.* at 10-14. He was "satisfied" with counsel and the way he had represented him. *Id.* No one had "done anything that [he] consider[ed] to be wrong or unfair which ha[d] forced [him] to plead guilty," *id.* at 16, or made him any promises not set forth in the plea agreement, *id.* at 17-18. He confirmed that he "was pleading guilty because [he was] in fact guilty, and that he did so "freely and voluntarily." *Id.* at 18-19.

3

Movant also testified that he understood that "even though the government is dismissing the remaining counts in the indictment, according to the advisory Sentencing Guidelines, the charges against [him] in those counts may still play a part in the calculation of [his] sentence." *Id.* at 13.

Department of Alcohol, Tobacco, and Firearms (ATF) Task Force Agent Daryle McCormick testified about the factual basis of the charges against Carter, *id.* at 19-21, and movant agreed that his testimony was correct. *Id.* at 21. He admitted he possessed firearms despite being a felon prohibited from so doing; though he complained that he had been drawn into the scheme by undercover agents' solicitation, he admitted that he "made a mistake, [he] possessed a firearm" and sold "firearms to the agent on the date [Agent McCormick] testified about." *Id.* at 21-22.

The Court sentenced Carter to 120 months' imprisonment, the statutory maximum. Doc. 38 (judgment dated March 18, 2014). Carter took no appeal, so his conviction became final on April 1, 2014. Fed. R. App. P. 4(b)(1)(A)(i) (defendants must notice their appeals within 14 days from the entry of judgment).

## II. ANALYSIS

### A. The Ippolito Factor

Carter contends that the lead prosecutor in his case, former Assistant United States Attorney Cameron Ippolito, engaged in extracurricular prosecutorial misconduct[2] that impacted his sentence. Had he known that she and Agent Valoze were involved – information he could have used to impeach both her and Valoze's credibility at trial – he may not have pleaded guilty. Doc. 43 at 7-16. He contends the Government's failure to turn over evidence (of their affair or the benefits one of their informants apparently received for his work) before he entered his plea was misconduct of the highest sort. *Id.* at 8-11.

But the Government has *no* duty to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant. *United States v. Ruiz*, 536 U.S. 622, 633 (2002). And Carter pleaded guilty, waiving all of his trial rights, including the right to receive material impeachment information. Doc. 46 at 8-10, 18. His lack of impeachment information that -- hypothetically -- might

---

[2] Ippolito's "improper relationship" with former Alcohol Tobacco and Firearms Agent Lou Valoze tarnished several convictions and sentences unrelated to Stanton's. *In re Ippolito*, 2015 WL 424522 at * 1 (S.D. Ga. Jan. 30, 2015).

5

have resulted in a lower sentence after a jury trial does nothing to unwind his knowing and voluntary plea, based on his unambiguous admission of guilt. *See id.* at 10; 18-19. *See United States v. Baez-Arrogo*, 553 F. App'x 922, 955 (11th Cir. 2014) (government's failure to disclose impeachment evidence does not make defendant's guilty plea involuntary or unknowing); *Davidson v. United States*, 138 F. App'x 238, 239 (11th Cir. 2005) (new information that would-have impeached a search warrant affidavit does not unwind defendant's guilty plea).

B. Statute of Limitations

It follows that Carter cannot look to 2255(f)(4) (discovery of a new, predicate fact material to the claim) to define when his one-year statute of limitations began to run. Under 28 U.S.C. § 2255(f)(1), the limitations clock started running the day his conviction became final (April 1, 2014) and ran out on April 1, 2015 (one year later). *See Mederos v. United States*, 218 F.3d 1252, 1253 (11th Cir. 2000) (judgment of conviction final on expiration of deadline for filing notice of appeal); Fed. R. App. P. 4(b)(1)(A)(i) (defendants must notice their appeals within 14 days from the entry of judgment). He did not file the present § 2255 motion, however, until January 27, 2016, nearly a year

later. Doc. 39. His motion is therefore also untimely under § 2255(f)(1).[3]

## III. CONCLUSION

Herbert Carter's 28 U.S.C. § 2255 motion should be DENIED.[4] For the reasons set forth above, it is plain that he raises no substantial claim of deprivation of a constitutional right. Accordingly, no certificate of appealability should issue. 28 U.S.C. § 2253; Fed. R. App. P. 22(b); Rule 11(a) of the Rules Governing Habeas Corpus Cases Under 28 U.S.C. § 2255 ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C.

---

[3] Equitable tolling can, in exceptional circumstances, allow untimely motions to proceed. *See Holland v. Florida*, 560 U.S. 631, 649 (2010). So can a "'fundamental miscarriage of justice'" that "has probably resulted in the conviction of one who is actually innocent." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013). Movant invokes neither tolling nor the miscarriage exception, and offers no new evidence or exceptional circumstances to trigger either.

[4] Because his motion is entirely without merit and his contentions are unambiguously contradicted by the record, an evidentiary hearing is not warranted. *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (a hearing is unnecessary "if the allegations are 'patently frivolous,' 'based upon unsupported generalizations,' or 'affirmatively contradicted by the record.'"); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (same); *Lynn*, 365 F.3d at 1239 (where the motion "amount[ed] to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied Lynn's § 2255 motion.").

§ 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this __16th__ day of March, 2017.

_/s/ G.R. Smith_
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA